**NELES–JAMESBURY, INC., Plaintiff,**

v.

**FISHER CONTROLS INTERNATIONAL, INC. and Fisher Service Company, Defendants.**

**Civil Action No. 94–40200–NMG.**

United States District Court, D. Massachusetts.

May 5, 1998.

R. Mark Petersen, Worcester, MA, Steven E. Lipman, Arthur I. Neustadt, Steven P. Weihrouch, Oblon, Spivak, McClelland, Maier & Neustadt, P.D., Arlington, VA, for Neles–Jamesbury, Inc.

Marshall D. Stein, Cherwin & Glickman, Boston, MA, Kenneth B. Herman, Christopher J. Harnett, Robert W. Morris, Robert B. Wilson, Fish & Neave, New York City, for Fisher Controls and Fisher Service Co.

## MEMORANDUM & ORDER

GORTON, District Judge.

In December, 1994, plaintiff Neles–Jamesbury Inc. ("NJI") brought this action against Fisher Controls International, Inc. and Fisher Service Company (collectively "Fisher") for infringement of U.S. Patent No. 4,479,510 ("the '510 Patent") relating to an attenuating rotating valve. NJI asserts that Fisher has infringed four claims of the '510 Patent.

In January, 1998, after a three-day *Markman* hearing, this Court issued a Memorandum of Decision construing disputed terms in those claims. *See Neles–Jamesbury, Inc. v. Fisher Controls Int'l, Inc.*, 989 F.Supp. 393 (D.Mass.1998); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Currently pending before this Court is Fisher's motion for summary judgment of invalidity and noninfringement.

## I. *Background*

The subject matter claimed in the patent-in-suit is an attenuating rotary valve used to 1) control the flow of fluids (liquids or gases) through pipes and 2) limit the noise in the pipes caused by changes in pressure. Aside from causing discomfort to workers, noise vibrations can cause severe damage to both pipes and valves if no attenuating device is used.

The prior art discloses attenuating valves that distribute pressure and thus successfully reduce noise but that also restrict the flow of fluid when the valve is fully opened. The valve invented by Roger Bey and claimed in the '510 Patent differs from prior inventions in that its attenuating device adjusts with movement of the "closure member" so that 1) the amount of attenuation varies with the opening and closing of the valve and 2) when the valve is fully opened, the attenuator does not significantly limit the flow of fluid.

The '510 patent contains 17 claims including five independent claims. NJI alleges that Fisher has infringed independent claim 2, dependent claim 5, independent claim 8 and dependent claim 11. Each of those claims discloses a valve assembly including a valve body, a rotating closure member, means for attenuating fluid comprising "a plurality of perforated plates" and means for mounting those plates within the valve body adjacent to the closure member so that the attenuating means rotates with the closure member. '510 Patent, col. 8. 11. 15–46, 57–63 & col. 9, 11. 7–36, 47–52.[1]

1. Claim 2, for example, recites in full:
    2. An attenuator valve assembly comprising: a valve body having a flow passage formed therethrough; a closure member; means for mounting said closure member in said valve body for rotation about an axis with respect to said valve body between a completely open position wherein said closure member allows passage of fluid therepast through said flow passage, and a completely closed position wherein said closure member blocks all flow through said flow passage; sealing means provided in said valve body flow passage for operatively engaging said closure member for preventing fluid flow through said flow passage past said closure member when said closure member is in said closed position; means for attenuating fluid flowing through said flow passage past said closure member, without significantly restricting flow when said closure member is in said completely open position, said means comprising perforated barrier means mounted with said closure member, said perforated barrier means including continuously open through-extending perforations and comprising a plurality of perforated plates; and means for mounting said perforated plates adjacent said closure member substantially within said valve body for rotation about said [sic] axis, and spaced from each other in the direction of said flow passage when said closure member is in said closed position so that the attenuating effect of said plates is immediately called into play when said closure member is first opened and the attenuating effect thereof is great during initial opening of said closure member, and diminishes as said closure member is moved toward said completely open position.
    '510 Patent at col. 8, ll. 15–46.

In its Memorandum of Decision construing disputed terms of the '510 Patent, this Court concluded that the term "plate" as used in that patent is:

> a structure that is thinner than it is wide or long and that may be flat, curved or twisted and perforated such as a screen or net but that is not a tube.

*Neles–Jamesbury, Inc.*, 989 F.Supp. at 400 (in which the following phrases were also construed: "barrier means", "attenuating effect . . . is immediately called into play when said closure member is first opened", "attenuating effect thereof is great during initial opening" and "points substantially on a geometric extension").

On February 5, 1998, Fisher filed the pending motion for summary judgment.

## II. *The Standard of Review*

The standard for summary judgment in patent litigation is the same as in any other kind of litigation. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir.1984); *see also Avia Group Int'l Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988) ("summary judgment is as appropriate in a patent case as in any other"). The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)).

The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

## III. *DISCUSSION*

### A. *Validity*

■■■ The issue of patent validity is a question of law amenable to summary judgment. *See Paragon Podiatry Laboratory v. KLM Laboratories*, 984 F.2d 1182, 1186 (Fed.Cir.1993). Summary judgment is only improper if the underlying factual considerations that form the basis of the conclusion of law are in dispute. *See id.* The challenger of a patent must prove invalidity by clear and convincing evidence. *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed.Cir.1984).

#### 1. *Obviousness*

Fisher argues that the '510 Patent is invalid as obvious in light of two prior patents, U.S. Patent No. 3,665,965 ("the Baumann Patent") and U.S. Patent No. 4,212,321 ("the Hulsey Patent").

■■■ Under 35 U.S.C. § 103, obviousness is a legal conclusion involving four preliminary factual inquiries: 1) the scope and content of the prior art, 2) the differences between the claims at issue and the prior art, 3) the level of ordinary skill in the pertinent art and 4) secondary consideration of indicia of nonobviousness such as commercial success, long felt but unsolved need and failure of others. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1050 (Fed.Cir.1988). Moreover, if a combination of two items of prior art is asserted to establish obviousness, the party asserting invalidity "bears the burden of showing some teaching or suggestion in these references which supported their use in combination." *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 293 (Fed.Cir.1985).

#### 2. *Analysis*

Fisher argues that it would have been obvious to combine the Hulsey Patent with the Baumann Patent and that the result would have been the invention disclosed in the '510 Patent.

The Baumann Patent, issued on May 30, 1972, discloses an attenuating device consisting of a series of stacked perforated plates mounted downstream from a valve, inside a pipe, perpendicular to the flow of fluid. As fluid passes through the perforations in the plates, pressure in the pipe decreases thereby attenuating noise. Because the Baumann plates are fixed in place, the attenuating effect does not cease even when the upstream valve is fully opened.

The Hulsey Patent, issued in July, 1980 (three months before Roger Bey filed his application for the '510 Patent), discloses a rotating control valve which attenuates noise in some open positions, but does not attenuate in the fully open position. The Hulsey valve resembles the device disclosed in the '510 Patent insofar as 1) the valve is spherical (as in some '510 embodiments), 2) the spherical closure member contains an attenuator within and 3) the attenuator does not interfere with the flow of fluids when the valve is fully open.

While the effect of the Hulsey invention is apparently the same as the Bey valve in the fully open position, the Hulsey valve achieves that effect in a very different way. *See, Jones v. Hardy,* 727 F.2d 1524, 1530 (Fed. Cir.1984) ("[T]reating the advantage as the invention disregards the statutory requirement that the invention be viewed 'as a whole'. . . .").

The spherical closure member has three different surfaces which correspond to three valve positions: closed, fully open and partially open (i.e., attenuating or "throttling"). First, portions of the sphere are solid. When the sphere is rotated so that the solid portions are in the flow path, they block the flow and the valve is closed. Second, on opposite ends of the sphere, there are large orifices which define a hollow cylindrical pathway ("the bore") through the sphere.

When the valve is turned so that the orifices encounter fluid, that fluid flows through the valve unhindered. Finally, portions of the sphere's surface are slotted. When the valve is turned so that the slots encounter fluid, the fluid is directed into a silencing chamber inside the valve, surrounding the hollowed cylinder.

In order to pass from the closed to the "throttling" to the open positions, the Hulsey valve must be rotated 270 degrees. Bey's valve, in contrast, must be rotated only 90 degrees (at least in some embodiments) to move from closed, to attenuating, to fully open. In addition, while Hulsey's silencing chamber is filled with little balls and/or ribs which perform the attenuating function, Bey's attenuator is comprised of perforated plates.

Moreover, while Hulsey's valve contains a flow passageway physically separate from its silencing chamber, Bey's valve contains a flow passageway in the same physical space occupied by the attenuating plates. A pure substitution of Baumann's plates for Hulsey's balls and ribs would require fixing those plates in a silencing chamber surrounding a hollow bore so that, in the fully open position, fluid would not encounter the plates at all. In Bey's valve, fluid encounters the plates even in the fully opened position (though the angle of the plates parallel to the flow permits the fluid to flow relatively freely).

■ Given the complexity of the Hulsey invention and in spite of the few features it shares with the invention disclosed in the '510 Patent, this Court is persuaded that a combination of the Baumann and Hulsey inventions would not be obvious to a person of ordinary skill in the art of valve mechanics. There is nothing in the Hulsey or Baumann Patents to suggest the desirability of combining the two inventions.[2] Moreover, Fisher fails to provide convincing evidence

---

2. Fisher argues that the suggested combination is implicit in Hulsey's numerical citation of the Baumann patent with 10 other patents as a prior art reference, together with his statement that prior attenuating devices interfere with the flow path when the valve is fully opened.

This Court disagrees. Although Hulsey promotes his own solution to the problem with prior attenuators, he does not teach how or why Bau-

mann's plates should be combined with a closure member to arrive at an equivalent solution. At most, a combination of the Hulsey and Baumann patents was "obvious to try." *But see, Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1380 (Fed.Cir.1986) ("'Obvious to try' is an improper consideration in adjudicating obviousness.").

that a combination of the Hulsey and Baumann devices would result in the invention disclosed in the '510 Patent.

This Court concludes, therefore, that the '510 Patent is valid and will deny Fisher's motion for summary judgment on the ground of invalidity.

### B. *Patent Infringement*

■ The analysis of a patent infringement claim involves two steps: determining the scope of the claims and determining whether the accused device infringes those claims. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed.Cir.1986).

#### 1. *Claim Interpretation*

■ Interpretation of the claims is a legal question to be decided by the court and determination of infringement is a factual question to be decided by the jury. *See Texas Instruments v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1562 (Fed.Cir.1986). This Court's interpretation of the claims is contained in its Memorandum of Decision entered in January, 1998, and therefore infringement is the only subject for consideration in the pending summary judgment motion.

#### 2. *Determination of Infringement*

■ Although the question of infringement is ordinarily a factual one for the jury, when the relevant material facts are not genuinely in dispute, the question of literal infringement "collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir.1996). Literal infringement may be found only when and if the accused device embodies every element of the patent claim. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed. Cir.1986).[3]

#### 3. *Analysis*

Fisher argues that its attenuating device does not infringe because it contains no "per-

forated plates." Instead, referring to this Court's construction of the term "plate" as excluding "tubes," Fisher contends that its attenuator is made up of multiple tubes which channel fluid through the valve.

In opposing summary judgment, NJI argues that Fisher's attenuator comprises multiple perforated curved plates attached to one another by non-perforated webs or ligaments (means for mounting the plates to the closure member inside the valve body). According to NJI, although Fisher's plates and ligaments joined together appear to create enclosures (albeit perforated enclosures), those plates and ligaments are not thereby transformed into tubes.

■ The record contains contradictory evidence, notably the accused device itself, which jurors might reasonably regard as containing "plates" as that term is defined by this Court. Because there exists a genuine issue of material fact as to whether Fisher's attenuator comprises "plates," this Court will deny Fisher's motion for summary judgment.

### ORDER

For the foregoing reasons, Fisher's motion for summary judgment (Docket No. 214) is **DENIED**.

---

**3.** NJI has not alleged infringement under the      doctrine of equivalency.