**ASAHI/AMERICA, INC., Plaintiff,**

v.

**MFRI, INC., Perma–Pipe, Inc., Midwesco Simtech, Inc., and I. Wayne James, Defendants.**

**No. 97 CIV. 5401(JSR).**

United States District Court, S.D. New York.

Feb. 18, 1999.

---

system known as double containment. One problem with such a system is that the inner and outer pipes may expand or contract at different rates depending on temperature and other factors, a problem especially acute in plastic piping. One possible solution is to devise a coupling system that will hold the inner and outer pipes in tandem despite the differentials in expansion.

In late 1985, Christopher G. Ziu, Asahi's product engineer for piping systems, set about designing a thermoplastic double containment piping system. *See* Trial Tr. at 6–7. As part of this work, Ziu, by late 1986, had developed a thermoplastic restraint coupling of unitary construction designed to address the problem of differential thermal expansion. Trial Tr. at 8. Asahi then applied for, and received, patents for both the overall system (known as the DUO–PRO system) and for the specific restraint coupling (known as the DOGBONE). The patent for the latter, United States Patent No. 4,930,544 ("the '544 patent"), was issued on June 5, 1990 to Ziu, who assigned it to Asahi. It covers a restraint coupling of unitary construction formed from a thermoplastic material that can be fused with the carrier and containment pipes of a double containment thermoplastic pipe assembly so as to hold them in place. *See* Pl. Exh. 3.

Asahi began promoting its DUO–PRO system with its DOGBONE component as early as 1987. Trial Tr. at 13, 347, 370. In this connection, Asahi representatives demonstrated the system and component to representatives of defendant Perma–Pipe, Inc. (including Perma–Pipe's Director of Engineering, Robert A. Maffei) as early as 1988. James Dep. at 58–59. Thereafter, in 1990, Maffei designed for Perma–Pipe the restraint coupling that defendants concede infringes the '544 patent if the patent is valid. Trial Tr. at 563. Becoming aware of Maffei's device, Asahi promptly notified Perma–Pipe of its concerns as to possible infringement of the '544 patent. Trial Tr. at 290. Further, in April 1991, Asahi instituted a reexamination proceeding with respect to the '544 patent in the United States Patent

Kenneth F. Florek, Hedman, Gibson, Costigan & Hoare, P.C., New York City, for plaintiff.

Paul A. Scrudato, New York City, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

RAKOFF, District Judge.

Plaintiff Asahi/America, Inc. ("Asahi") alleges that defendants MFRI, Inc., Perma–Pipe, Inc., Midwesco Simtech, Inc., and I. Wayne James infringed Asahi's patent on a device known as a thermoplastic restraint coupling. Defendants concede that if the patent is valid, it is enforceable and they infringed it. Trial Tr. at 30. They contend, however, that Asahi's device is an obvious application of prior art and that its patent is therefore invalid. *See* 35 U.S.C. § 103. The issue having been tried to the Court, the Court makes the following findings of fact and conclusions of law.[1]

### Findings of Fact

To prevent such problems as leakage, pipes that carry liquids and other substances ("carrier pipes") are often surrounded by other, outer pipes ("containment pipes"), a

---

1. While transcript and exhibit references are cited with respect to certain of the Court's findings, the findings also reflect the Court's credibility determinations and circumstantial inferences.

and Trademark Office. Ultimately, the United States Patent and Trademark Office Board of Patent Appeals and Interferences confirmed the '544 patent. *See* Pl. Exh. 147–150. There followed this action.

*Prior Art.* As mentioned, defendants contend that the '544 patent is invalid because it claims protection for an extension of prior art that would have been obvious to a person of ordinary skill in that art. In assessing this contention, the Court finds that the relevant level of ordinary skill in the relevant art is the average level of skill possessed by those engineers working for piping system manufacturers or contractors who have experience with thermoplastic piping systems. *See* Perma–Pipe Design Guide, Pl. Exh. 58; Maffei Dep. at 113–15; Trial Tr. at 68–70; 625–27; 676–81. While experience with metal piping systems might also be helpful, thermoplastic material has a higher coefficient of thermal expansion than does metal, Pl. Exh. 235, Appendix C, and the ASME Piping Code cautions against predicting thermal expansion stresses in plastic piping systems from known stresses in metal systems. *See* Pl. Exh. 235; Trial Tr. at 689–91; *see also* Pl. Exh. 11 and Trial Tr. at 681–83. Thus, while one designing thermoplastic piping systems might look to metal piping systems for some guidance in addressing problems in thermoplastic piping, no simple or obvious correlation exists between the two.

It is therefore significant that all the prior art restraint devices relied on by defendants are composed of metal. Nor is this the only significant difference between plaintiff's patented coupling and the examples of prior art cited by defendants. In particular, Perma–Pipe's own prior couplings, relied on by defendants, in addition to being made of metal, are fabricated from several parts welded together rather than being of unitary construction, have an external flange for locking the system to the external environment that is not required by plaintiff's coupling, and, unlike plaintiff's coupling, do not have both carrier and containment portions whose ends can be joined to carrier and containment pipes by end-to-end fusion. *See* Trial Tr. at 685–88; 693–94; Pl. Exh. 3, 86, 87, 89, 90, 98.

At trial, defendants relied heavily on a (belatedly-discovered) "prior art" developed for the United States government's Oak Ridge National Laboratory ("ORNL"). Specifically, in the mid 1970's, the United States Energy Research and Development Administration sent to interested contractors a bid package, advertised in Commerce Business Daily, containing, among other things, production specifications for a "bend partition plate" for the piping system at ORNL's Intermediate Level Waste Management Facility. Trial Tr. at 412–14, 430. Similarly, in 1990 and 1993, the Department of Energy sent bid packages to interested contractors, including Perma–Pipe, describing, among other things, similar partition plates. Trial Tr. at 311–13, 323–24. Defendants contend these bend partition plates are prior art that effectively render obvious distinctive features of the plaintiff's couplings.

However, the drawing of the ORNL bend partition plate, Def. Exh. 81, shows a stainless steel device situated at changes in direction of the metal piping system, rather than (as in the case of plaintiff's device) a thermoplastic coupling placed at regular intervals regardless of any change in the direction of the piping. *See* Def. Exh. 81. Moreover, the ORNL device, although of unitary construction, has beveled ends on the containment and carrier portions that are not suitable for end-to-end fusion as called for in the '544 patent claims. Likewise, the ORNL drawing, unlike plaintiff's device, includes an external flange for anchoring to the external environment. Trial Tr. at 471, 487. Finally, the pipings for which the ORNL partition plate was designed were not expected to carry high temperature materials. Trial Tr. at 441, 486, 491–92. Thus, the ORNL partition plate cannot be said to constitute prior art that would have made the development of plaintiff's device obvious.

Similar significant differences distinguish the Sandl reference, DE 3,105,406, Pl. Exh. 190, which is cited as prior art by defendants. Indeed, the '544 patent was allowed over the Sandl reference both in the original examination of the '544 patent and in the reexamination proceeding. Trial Tr. at 147–49.

Finally, as to the remaining examples of anchoring devices cited as prior art by defendants—the MacLeish patent, U.S. Re 22,988, the Kaiser patent, U.S. 2,696,835; Pl. Exh. 83, and the devices catalogued by Ric–Wil—these devices teach simply that differential thermal expansion in metal double walled piping systems can be addressed by connecting the carrier and containment pipes of the system. *See* Defendants' Post–Trial Brief at 5, 25. They in no way point to the further improvements and solutions for thermoplastic double wall containment systems presented by the '544 patent.

*Secondary considerations.* Two secondary considerations are also of relevance. The first concerns the commercial significance of the plaintiff's device. From its initial marketing (to IBM in 1987), Asahi's DUO–PRO system was a commercial success. Trial Tr. at 13, 341, 347, 370. While changes in federal environmental laws may have increased demand for double containment piping systems generally, the acknowledged difficulties of prior thermoplastic coupling systems in dealing with differential thermal expansion make it evident that the DOGBONE coupling component was a significant feature of the new success. *See* Trial Tr. at 16–17, 77, 562, 672; Maffei Dep. at 108–09; Elgendy Dep. at 276–77; Pl. Exh. 126, Pl. Exh. 215.

Second, plaintiff has adduced substantial evidence to show that defendants copied plaintiff's invention. Perma–Pipe's Maffei admitted seeing plaintiff's DOGBONE coupling—a coupling he acknowledged to be innovative—as early as 1988. Trial Tr. 562–63; Maffei Dep. at 108–09. By 1990, Maffei had developed a thermoplastic double containment piping system for Perma–Pipe that included a coupling component so similar to plaintiff's that defendants have conceded that, if plaintiff's patent is valid, Perma–Pipe's coupling infringes that patent. Trial Tr. 562–63. Thereafter, Perma–Pipe mandated the use of such a coupling in all its thermoplastic double containment piping systems. Pl. Exh. 58, Bates D7589. The Court draws the inference that Perma–Pipe copied what it regarded as plaintiff's innovative and significant invention and thereafter used it widely.

*Conclusions of Law*

In seeking to establish the invalidity of plaintiff's patent, defendants must prove the obviousness of plaintiff's invention by clear and convincing evidence. *Kegel Co. v. AMF Bowling, Inc.,* 44 USPQ2d 1123, 127 F.3d 1420 (Fed.Cir.1997). The obviousness inquiry requires the Court to consider the scope of the relevant prior art and the differences between the prior art and plaintiff's invention, and determine whether a person exercising ordinary skill in the field of the invention and aware of the problem addressed by plaintiff's invention would have found the invention obvious. *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). As previously mentioned, the Court finds that the level of ordinary skill in the pertinent field of endeavor in this case is the average level of skill possessed by those engineers working for piping system manufacturers and contractors who have experience with thermoplastic piping systems. The Court concludes that the prior art cited by defendants would not have taught such practitioners that the problems raised by thermal expansion in thermoplastic double containment piping could obviously have been solved by the creation and implementation of a thermoplastic coupling of unitary construction with carrier and containment portions to be fused to the carrier and containment pipes as claimed in the '544 patent.

In this regard, while the Court concludes (though not without some difficulty) that the ORNL bend partition plate qualifies as prior art, *see* 35 U.S.C. § 102(b); *see also Constant v. Advanced Micro–Devices,* 848 F.2d 1560, 1568–69 (Fed.Cir.1988); *Massachusetts Institute of Technology v. AB Fortia,* 774 F.2d 1104, 1109 (Fed.Cir.1985), the Court also concludes that the plate differs significantly from the DOGBONE component in ways that render it inadequate (either alone or in tandem with other prior art) to support a defense of obviousness. As previously noted, the ORNL partition differs importantly from the plaintiff's coupling, among other ways, in that it is made of metal and is used only at changes of direction in a piping system carrying materials of relatively low

temperature and anchored at such changes of direction to the external environment. Considering the teaching of this prior art as a whole, *see Bausch & Lomb v. Barnes–Hind Hydrocurve,* 796 F.2d 443, 448 (Fed.Cir. 1986), the Court concludes that the ORNL bend partition plate would not have taught a person of ordinary skill in the relevant art that it would be obvious to use a thermoplastic coupling of unitary construction and employed at regular intervals as a means of satisfactorily controlling differential thermal expansion in a thermoplastic double containment piping system.

This conclusion applies with even greater force with respect to the Perma–Pipe anchors and other prior art referenced by defendants, which are not even of unitary construction. Moreover, the Court's conclusion as to the non-obviousness of plaintiff's invention is corroborated by the fact that, when plaintiff's invention was marketed, it enjoyed immediate and substantial commercial success not given to prior thermoplastic double containment piping systems, and also by the fact that it was copied by defendants as soon as they were presented with it. *See Generally Specialty Composites v. Cabot Corp.,* 845 F.2d 981, 991 (Fed.Cir.1988); *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1053–54 (Fed.Cir.1988).

The Court thus concludes that defendants have failed to carry their burden of showing the obviousness of plaintiff's invention by clear and convincing evidence and, therefore, that judgment as to liability must be granted to plaintiff. The parties have previously consented that, if the Court made such a determination, the case should be sent to a Magistrate Judge for an inquest as to damages. Accordingly, the case is hereby referred for such purpose to Magistrate Judge Dolinger, with the direction that he hold such an inquest and render a determination thereupon by no later than three months hence. Counsel are directed to jointly contact Magistrate Judge Dolinger upon receipt of this Order so as to promptly schedule the inquest.

SO ORDERED.