**WESLEY JESSEN CORP., Plaintiff,**

v.

**COOPERVISION, INC., Defendant.**

No. CV01–3678 AHM (EX).

United States District Court,
C.D. California.

June 17, 2002.

Mark T. Banner, Timothy C. Meece, Thomas K. Pratt, Rebecca P. Rokos, Jason S. Shull, Banner & Witcoff, Ltd., Chicago, IL, Peter I. Ostroff, Edward G. Poplawski, Bridget J. Santorelli, Sidley Austin Brown & Wood LLP, Los Angeles, CA, for Plaintiff Wesley Jessen Corp.

Edward W. Remus, Thomas J. Wimbiscus, Anthony E. Dowell, Christopher V. Carani, McAndrews, Held & Malloy, Ltd., Chicago, IL, David J. Schindler, Bruce Kuyper, Latham & Watkins, Los Angeles, CA, for Defendant CooperVision, Inc.

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MATZ, District Judge.

### INTRODUCTION

This matter is before the Court pursuant to Defendant Coopervision, Inc.'s (alternatively, "Defendant" or "Coopervision") Motion for Partial Summary Judgment. Coopervision moves for summary judgment on Count One of Plaintiff Wesley Jessen Corp.'s (alternatively, "Plaintiff" or "Wesley Jessen") Amended Complaint for Patent Infringement ("FAC"). That claim alleges that Coopervision infringed claims 1, 13, 15, 22, 23 and 25 of U.S. Patent No. 5,414,477 ("'477 Patent") entitled "Colored Contact Lens Having Very Natural Appearance." (FAC ¶ 18; Statement of Genuine Issues ("SGI") ¶ 1). Coopervision contends it is entitled to summary judgment on this claim because the undisputed facts demonstrate that the '477 Patent is invalid.[1]

Defendant makes two arguments in support of its motion. First, Coopervision argues that each of the claims in the '477

---

**1.** This matter is ripe for summary judgment as the Court has already construed the disputed terms in the '477 Patent in its March 14, 2002 *Markman* Order. That order is hereby incorporated by reference.

Patent is obvious and thus invalid in view of the combination of the Knapp '402 patent and the LeGrand–Fuhrman Vanity Eye Accent lenses ("LeGrand–Fuhrman lenses"). (Mot. at 14). Second, Coopervision argues that the claims of the '477 patent are invalid because they were anticipated and/or obvious in view of three lenses produced by the Narcissus Eye Research Foundation ("Narcissus Foundation"). (Mot. at 17). In opposition, Plaintiff contends that neither the combination of the Knapp '402 patent and the LeGrandFuhrman lenses nor the Narcissus Foundation lenses standing alone establish by clear and convincing evidence that the '477 Patent is invalid. Rather, Plaintiff argues, several factors create a genuine issue as to the validity of the '477 Patent. Because the Court finds Plaintiff is correct that there is a genuine issue as to whether Coopervision can prove the invalidity of the '477 Patent by clear and convincing evidence, Defendant's motion is DENIED.

## MOTION STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.; Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## DISCUSSION

## I. PRINCIPLES OF INVALIDITY

■ Because a patent is presumed valid, Defendant has the burden of proving invalidity by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed.Cir.1986); *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1050 (Fed.Cir.1988). This burden is not reduced merely because the moving party relies on prior art that was not considered by the United States Patent and Trademark Office ("PTO"). *Uniroyal, Inc.,* 837 F.2d at 1050. However, the production of prior art or other invalidating evidence not before the PTO does eliminate, or at least reduce, the element of deference due the PTO. *American Hoist Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359–1360 (Fed.Cir.1984). As such, "the evidence may…carry more weight and go further toward sustaining the attacker's unchanging burden." *Id.*

### A. Anticipation

■ A patent claim may be ruled invalid for non-novelty. A patent claim is non-novel and thus invalid for anticipation if the invention claimed "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States…" 35 U.S.C. § 102(b). Anticipation under 35 U.S.C. § 102 "requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention." *Rockwell International Corp. v. United States,* 147 F.3d 1358, 1363 (Fed.Cir.1998). In other words, a claimed invention is invalid as anticipated only where there is no difference between the claimed invention and the reference disclosure. *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir.1991).

### B. Obviousness

■ A patent claim may also be deemed invalid as obvious even if the invention claimed is not identically disclosed or described in the prior art if "the differences between the [claimed invention] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art…" 35 U.S.C. § 103(a). Obviousness under 35 U.S.C. § 103(a) is a legal conclusion involving a preliminary determination of four factual inquiries:

(1) the scope and content of the prior art;

(2) the differences between the claims and the prior art;

(3) the level of ordinary skill in the pertinent art; and

(4) secondary considerations, if any, of nonobviousness.

*Uniroyal, Inc.,* 837 F.2d at 1050; *Rockwell International Corp.,* 147 F.3d at 1362.

In determining obviousness, the court must ascertain whether the prior art would have suggested to one of ordinary skill in the art that the claimed invention should be carried out and would have a reasonable likelihood of success. *Rockwell International Corp.*, 147 F.3d at 1366. One of ordinary skill in the art is presumed to know all the pertinent prior art. *In re Carlson*, 983 F.2d 1032, 1038 (Fed. Cir.1992). Nonetheless, the court " 'cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention.' " *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed.Cir.2000) (*quoting In re Fine*, 837 F.2d 1071, 1075 (Fed.Cir.1988)). The best defense against the improper use of hindsight is the "rigorous application" of the requirement that the moving party demonstrate a teaching or motivation to combine the prior art references. *Id.* Thus, where a finding of obviousness depends on a combination of prior art references, there must be some teaching, suggestion or motivation to combine the references. *Id.* at 1372; *Uniroyal, Inc.*, 837 F.2d at 1051.

Moreover, objective evidence of nonobviousness, when present, must be considered in determining whether a patent claim is invalid as obvious. *Uniroyal, Inc.*, 837 F.2d at 1053. These "secondary considerations" include the commercial success of the claimed invention and whether the invention satisfied a long felt but unsolved need in the industry. *Ecolochem, Inc.*, 227 F.3d at 1376.

## II. DEFENDANT HAS NOT DEMONSTRATED A SUGGESTION TO COMBINE THE KNAPP '402 PATENT AND THE LEGRAND–FUHRMAN LENSES AND THUS CANNOT RELY ON SUCH A COMBINATION TO SHOW INVALIDITY.

As stated *supra*, Defendant argues claims 1, 13, 15, 22 and 25 of the '477 Patent are invalid because they are obvious in view of the combination of the Knapp '402 patent and the LeGrand–Fuhrman lenses. (Mot. at 14). Specifically, Defendant argues that the '477 Patent should be declared invalid because it would have been obvious for one of ordinary skill in the art to combine the "colored, opaque, intermittent pattern" utilized in the Knapp '402 patent with the iris-imitating, two color, jagged border pattern of the LeGrand–Fuhrman lenses. (*Id.*). However, because Defendant has not demonstrated a suggestion to combine the Knapp '402 patent with the design of the LeGrand–Fuhrman lenses, the Court disagrees.[2]

### A. The Prior Art

#### 1. *Knapp '402 Patent*[3]

The Knapp '402 patent disclosed a colored contact lens that created a fundamental change in eye color while maintaining a natural appearance. (Carani Decl., Ex. 4 at 101). Like the '477 Patent, the Knapp '402 patent disclosed a "colored, opaque, intermittent pattern deposited on a surface over said entire iris section." (*Id.*; SGI ¶ 9). In addition, like the '477

---

2. The parties generally agree that a person of ordinary skill in the art would consist of either (1) an opthamologist or optometrist with experience diagnosing eye disorders and fitting contact lenses or (2) contact lens designers and developers with some industrial experience in the development and manufacturing of contact lenses. (Harris Decl. ¶ 9; Meshel Decl. ¶ 33). Defendant has also put forth evidence that the skill in the art is "reasonably high." (Meshel Decl. ¶ 33; Carani Decl., Ex. 3, ¶ 28).

3. There is no dispute that the Knapp '402 patent qualifies as prior art. (SGI ¶ 12).

Patent, the Knapp '402 patent left portions of the lens uncolored within the interstices of the pattern. (Carani Decl., Ex. 4 at 101). However, unlike the '477 Patent, the Knapp '402 patent did not disclose how one would arrange a pattern of dots having more than one color to achieve a more natural appearance. (Carani Decl., Ex. 1 ('477 Patent) at 12).

### 2. The LeGrand–Fuhrman Lenses [4]

Defendant does not produce substantial evidence regarding the specific design of the LeGrand–Fuhrman lenses. In fact, Defendant produces only the declaration of Herbert Fuhrman, the owner of A & H Fuhrman, Inc., the successor in interest of Le–Grand–Fuhrman. (Carani Decl., Ex. 5 at ¶¶ 4,6). Mr. Fuhrman's declaration states that his company has been manufacturing and selling cosmetic contact lenses since about 1960. (*Id.* at ¶ 6). These lenses were developed for a variety of purposes including prosthetic lenses for injured and disfigured eyes and cosmetic lenses designed to change the color and appearance of the eye of a normal person. (*Id.*).

Attached to Mr. Fuhrman's declaration are several exhibits which he represents demonstrate an accurate set of lenses manufactured, sold and distributed by A & H Fuhrman in 1985 and earlier. (*Id.* at ¶ 10). Those exhibits, along with Mr. Fuhrman's declaration, illustrate the following facts regarding the LeGrand–Fuhrman lenses:

1. The lenses were available in nine colors: verde, avocado, leaf, mauve, hazel, dawn, regal, Siamese and dusk. (Carani Decl., Ex. 5, Ex. D).

2. The lenses had a clear pupil section and a colored iris section. (SGI ¶¶ 17, 20).

3. The colored iris section of each lens was separately created by hand and thus no two lenses were identical. (Carani Decl., Ex. 5 at ¶ 16).

4. The lenses utilized two shades of color in the colored iris section. (SGI ¶ 23).

5. A jagged border separated the first shade from the second shade in the colored iris section. (SGI ¶ 24).

Mr. Fuhrman's declaration and the exhibits attached thereto do not demonstrate whether the LeGrand–Fuhrman lenses utilized a "pattern" of dots to produce the color on the iris section. Plaintiff has produced expert testimony that the LeGrand–Fuhrman lenses used solid colors over the entire iris. (Harris Decl. ¶ 17). Thus, the expert, Harris, contends, without apparent dispute, that the LeGrand–Fuhrman lenses contained no intermittent pattern of opaque elements and did not provide for any interstitial areas of the iris section that were uncolored. (*Id.*).

### B. Teaching

 As stated *supra*, where, as here, a finding of obviousness depends on a combination of prior art references, there must be some teaching, suggestion or motivation to combine the references. *Ecolochem, Inc.*, 227 F.3d at 1372; *Uniroyal, Inc.*, 837 F.2d at 1051. The reason, suggestion or motivation to combine may be found explicitly or implicitly: (1) in the prior art itself; (2) in the knowledge of those of ordinary skill in the art that certain references are of special interest or importance in the field; or (3) from the nature of the problem to be solved. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 655 (Fed.Cir.2000). Although the references need not expressly teach that the disclo-

---

**4.** Defendant has produced evidence that the LeGrandFuhrman lenses qualify as prior art. (SGI ¶ 31). For the purposes of this motion only, Plaintiff does not dispute this statement. (*Id.*).

sure contained therein should be combined with another, the showing of "combinability" must be "clear and particular." *Id.* In other words, there must be some teaching or suggestion to "look to particular sources, to select particular elements, and to combine them as combined by the inventor." *Crown Operations International, Ltd. v. Solutia, Inc.,* 289 F.3d 1367, 1376 (Fed.Cir.2002).

### 1. *Knapp '402 Patent*

▇ Defendant contends that the Knapp '402 patent expressly suggested the combination of its intermittent pattern with a multi-colored lens such as the LeGrand–Fuhrman lenses. (Mot. at 14). In support of this argument, Defendant points to the following language in the Knapp '402 patent:

> For a more natural effect, the printing step may be repeated one or more times using different patterns in different colors, since upon close examination the iris's of many persons are found to contain more than one color.

(Carani Decl., Ex. 4 at 104).[5]

Defendant has failed to put forth evidence that the language cited, standing alone, would suggest to a person of ordinary skill in the art that the Knapp '402 patent should be combined with the LeGrand–Fuhrman lenses. In fact, Defendant's expert, Dr. Rick Silver, does not state in either his declaration or deposition that the language of the Knapp '402 patent suggested to a person of ordinary skill in the art that the Knapp patent should be combined with the LeGrand–Fuhrman lenses.[6] In addition, Mr. Fuhrman himself, the Defendant's sole authority on the LeGrand–Fuhrman lenses, testified that it never occurred to him to use the pattern shown in the Knapp '402 patent with his LeGrand–Fuhrman lenses. (Shull Decl., Ex. H at 831).

Moreover, there are several reasons to believe the Knapp language does not suggest combining the Knapp '402 patent with the LeGrand–Fuhrman lenses. First, Plaintiff's expert witness, Dr. Harris, has stated that nothing in the Knapp '402 patent would suggest to a person of ordinary skill in the art that it should be combined with the LeGrand–Fuhrman lenses or any other prior art. (Harris Decl. ¶¶ 14, 40, 42). Second, the language of the Knapp '402 patent lacks any express reference to the LeGrand–Fuhrman lenses or any other prior art. Third, the Knapp '402 patent used one color, although the language in that patent does disclose the use of more than one color in a pattern. But that language does not suggest that the patterns of different colors should be arranged in any particular manner. More

---

5. In a footnote, Defendant also points to the following language in the Barnes–Hind International Patent Application WO 85/04679 as a suggesting reference:

 [A]n uneven appearance can be given to the pattern on the lens, and if a series of colors are printed one on top of the other on the same lens, using varied printing plates or pads, an uneven and multi-colored effect can be created. By combining features such as these, the practitioner can approximate the appearance of the natural human iris, which of course, can have minute streaks or spots of unevenness in shade and intensity.

(Carani Decl., Ex. 10 at 302–03; Mot. at 15 fn. 11). Defendant does not describe the claimed invention of the Barnes–Hind application and does not explain why this language would suggest that the Knapp '402 patent and LeGrand–Fuhrman lenses should be combined. However, the Court does not find that this ambiguity is material, as the language of the Barnes–Hind application is largely similar to that of the Knapp '402 patent and thus adds little, if anything, to the analysis.

6. Dr. Silver is an optometrist who also serves as a contact lens consultant to the motion picture and television industry. (Carani Decl., Ex. 3 at 33).

specifically, it clearly does not suggest that the second color should be printed over the first in a manner producing an apparent jagged border between the colors, as in the LeGrand–Fuhrman lenses and the '477 Patent. Finally, and perhaps most importantly, because the Knapp '402 patent expressly suggests that the first pattern of dots be printed over with a second pattern of dots, that patent does not suggest that it be combined with lenses like those designed by LeGrand–Fuhrman, which used solid colors to render opaque the entire iris section of the lens. In fact, because the Knapp '402 patent suggests the use of a second pattern of dots, in some manner the patent "teaches away" from combining its claimed invention with lenses that did not use such a pattern.

In its reply, Defendant also argues it has demonstrated a "motivation" to combine based on (1) the nature of the problem to be solved—that of simulating a naturally appearing eye—and (2) the knowledge of persons of ordinary skill in the art. (Reply at 5). The sole evidence submitted by Defendant on these points is the declaration of Dr. Silver. Dr. Silver states that because the overprinting process suggested by Knapp is "similar in practical effect" to the "hand painting technique used to create hard contact lens [sic]," it would have been obvious to one of ordinary skill in the art to produce lenses like those described in the '477 Patent. (Carani Decl., Ex. 3 ¶ 17). However, his testimony on this point is contradicted by Plaintiff's expert, who testified that there was nothing in the prior art that would have led a person of ordinary skill in the art to combine the LeGrand–Fuhrman and Knapp lenses. (Harris Decl. ¶ 40). In fact, Plaintiff's expert testified that the use of an intermittent pattern would have been inconsistent with lenses of the type designed by LeGrand–Fuhrman. (Harris Decl. ¶ 42). As such, there is a genuine issue on this point and the Court cannot

find that such a motivation was present as a matter of law.

For the foregoing reasons, the Court finds that, at a minimum, there is a genuine issue as to whether the Knapp '402 patent or any other prior art would have suggested to a person of ordinary skill in the art that the Knapp '402 patent be combined with the LeGrand–Fuhrman lenses. As such, Defendant is not entitled to summary judgment when its motion would require the Court to combine the Knapp and LeGrand–Fuhrman lenses to demonstrate that the '477 Patent is invalid as obvious. Thus, insofar as Defendant's motion is based on this argument, it is denied.

## III. THE DEFENDANT HAS FAILED TO DEMONSTRATE THAT THE '477 PATENT WAS ANTICIPATED AND/OR OBVIOUS IN LIGHT OF THE NARCISSUS FOUNDATION LENSES.

Defendant also argues that the claims of the '477 patent are invalid because they were anticipated and/or obvious in view of three specific contact lenses produced by the Narcissus Foundation and provided to patients in 1987 and 1988. (Mot. at 17). Specifically, Defendant contends that each of the three lenses anticipated all or nearly all of the claims of the '477 patent. In opposition, Plaintiff argues that a reasonable jury could find that none of the Narcissus Foundation lenses anticipate all of the limitations of the '477 patent. (Opp'n. at 17). In addition, Plaintiff argues that Coopervision has failed to provide a proper evidentiary foundation for any of the lenses its motion relies on and thus summary judgment is not warranted. (Opp'n. at 18). The Court finds that Defendant has failed to provide a sufficient evidentiary basis to establish the design of the Narcissus Foundation lenses. In addition, even as-

suming the Court had a sufficient basis to determine the design of those lenses, there are genuine issues which preclude summary judgment. As such, Defendant's motion is denied.

### A. Prior Art—Narcissus Foundation Lenses

The not-for-profit Narcissus Foundation was co-founded by Dr. Leroy Meshel in 1974. (SGI ¶ 36). The purpose of the foundation was to develop and promote the use of colored contact lenses for individuals with damaged eyes, (Id.). Between 1974 and 2001, the Narcissus Foundation created thousands of custom-made colored contact lenses that were distributed to patients. (SGI ¶ 37).

Photographs of most of the Narcissus Foundation lenses were not taken or kept in the patient records. (Mot. at 10). Thus, by its own admission, Defendant lacks pictorial representations of the lenses which it contends anticipate the claims of the '477 Patent. As a result, Defendant relies entirely on the declaration of Dr. Meshel to demonstrate the content and design of the Narcissus Foundation lenses. (Mot. at 10).[7] Dr. Meshel has reconstructed the appearance of several specific lenses found in the medical records of Narcissus Foundation patients. (Meshel Decl. ¶¶ 36–47). On the basis of these reconstructions, Defendant contends that three specific lenses anticipate and/or render obvious each claim of the '477 patent. These lenses were distributed to patients P202, P1782 and P1329 and thus will be referred to in this manner.

### B. Anticipation

■ As stated *supra*, a claimed invention is invalid as anticipated only where the defendant can prove by clear and convincing evidence that there is no difference between the claimed invention and the prior art. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir.1991). Moreover, where, as here, a defendant claims a patent was anticipated by prior art "in public use or on sale in this country. . . ." that prior art must have been in public use "more than one year prior to the date of the application for patent in the United States. . ." 35 U.S.C. § 102(b). A piece of prior art is in "public use" where there has been "'any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.'" *Baxter International, Inc. v. Cobe Laboratories, Inc.*, 88 F.3d 1054, 1058 (Fed.Cir.1996) (*quoting In re Smith*, 714 F.2d 1127, 1134 (Fed.Cir. 1983)).

■ The Court finds Defendant has failed to demonstrate anticipation by clear and convincing evidence for two reasons. First, Defendant has failed to provide a sufficient evidentiary basis to establish the design of the Narcissus Foundation lenses or that those lenses were in "public use" prior to November 1, 1988 one year before the '477 Patent application was submitted. Defendant has no substantial evidence regarding "public use." The patient records reviewed by Dr. Meshel demonstrate that each of the lenses referenced above in some fashion was dispensed to a patient prior to November 1, 1988. (Meshel Decl., Ex. 14 at 208, 229, 235). However, as

---

**7.** Coopervision contends that Wesley Jessen has the names of the doctors and patients and should be compelled to produce those names. Coopervision did not seek to compel those records, the discovery cut off has arrived and

the names would not reveal the design of the lenses. Moreover, at the hearing, Plaintiff's lawyer produced a letter demonstrating that Coopervision knowingly chose to proceed with this motion without that information.

Plaintiff points out, there is absolutely no evidence that such lenses were provided to the patients "under no limitation, restriction, or obligation of secrecy to the inventor" or that the lenses were worn as intended by the patients. (SGI ¶¶ 72, 92, 112). Thus, although it may be reasonable to make each of those assumptions, there is certainly no "clear and convincing" evidence on these points.

Furthermore, there is a significant question as to whether the Defendant's "simulations" of the Narcissus Foundation lenses are reliable and accurate. Dr. Meshel admits that the "simulations" he relies on were based on patient medical records. (Meshel Decl. ¶ 34). However, as the attachments to Dr. Meshel's declaration make clear, those records consist solely of handwritten notes that do not clearly demonstrate the type of lens distributed. (Meshel Decl., Ex. 14 at 207–08, 228–29, 234–35). In addition, in his deposition, Dr. Meshel admitted that he had little or no contact with the "graphics person" who created the simulations and that he did not know what information was provided that person. (Shull Decl., Ex. E at 780–84). As such, there is a substantial question as to whether the "simulations" are accurate representations of the Narcissus Foundation lenses. This issue, standing alone, provides a sufficient basis to deny Defendant's motion as there are substantial questions as to the actual design of the Narcissus Foundation lenses. As such, the Court surely cannot find that such lenses anticipate the claims of the '477 Patent.

Second, even assuming Defendant had provided a sufficient evidentiary basis for the Court to consider anticipation, the patient records themselves create a genuine issue on the subject. For example, Defendant argues vigorously that each of the lenses at issue (P202, P1329, P1782) was not fully opaque in the iris section but rather used an intermittent pattern like that of the '477 Patent. However, there is no language in the patient records expressly supporting this claim. Rather, as Dr. Meshel admits, this claim is based solely on the fact that the patient records for each of the three lenses did *not* contain notations "for an 'opaque' or '.03%' lens." (Meshel Decl. ¶¶ 36, 43, 45).[8] As a result, Dr. Meshel contends, those lenses were "*likely*" non-opaque. (*Id.*).[9] Dr. Meshel's testimony that the absence of such a notation indicates that the lens was designed with an intermittent pattern like that of the '477 Patent is entirely uncorroborated. As such, it is insufficient to demonstrate by "clear and convincing" evidence that the Narcissus Foundation lenses used an intermittent pattern and thus may have anticipated the claims of '477 Patent. *Finnigan Corp. v. International Trade Comm.*, 180 F.3d 1354, 1370 (Fed.Cir.1999) (holding that the uncorroborated testimony of a witness regarding anticipation is insufficient as a matter of law to meet the "clear and convincing" standard to prove invalidity).

Moreover, even if, as Defendant argues, the patient records could qualify as sufficient corroboration for Dr. Meshel's testimony, there is a genuine issue as to wheth-

---

**8.** As to the lens distributed to patient P202 only, Dr. Meshel also states "notations regarding the lens' base curve, power and thickness" reveal the lens was not completely opaque. (Meshel Decl. ¶ 36). However, he fails to state why such notations reveal anything regarding the design of the lens and it

certainly is not clear from the patient record itself.

**9.** In his declaration, Dr. Meshel refers to lenses with fully opaque iris sections as "doped" lenses. (Meshel Decl. ¶ 32). Conversely, lenses that were not fully opaque in the iris section are "undoped." (*Id.*).

er the Narcissus Foundation lenses were completely opaque or used an intermittent pattern like that of the '477 Patent. Plaintiff's expert, Dr. Harris, states in his declaration that there is nothing in the patient records that would indicate the Narcissus Foundation lenses used an intermittent pattern. (Harris Decl. ¶ 31). In addition, the patient records for P1329 and P1782 both state at various points that the lenses distributed to those patients were "opaque." (Harris Decl., Ex. K at 302; Ex. M at 349–51). In fact, the patient file for P1329 states that the lens type was that of "opaque painted iris." (Harris Decl., Ex. K at 302). Based on this evidence, a reasonable jury surely could find that each of the Narcissus Foundation lenses was fully opaque and thus did not use an intermittent pattern like that of the '477 Patent. As such, there is a genuine issue as to whether those lenses anticipated the claims of the '477 Patent and Defendant's motion must be denied.

### CONCLUSION

For the foregoing reasons, and good cause appearing therefor, Defendant's Motion for Partial Summary Judgment based on the invalidity of the '477 Patent is DENIED.[10]

IT IS SO ORDERED.