**ROSEN ENTM'T SYS., LP**

v.

**ICON ENTERS., INC.**

No. EDCV04–1517RT(SGLX).

United States District Court,
C.D. California.

Feb. 28, 2005.

.

**2.** Indymac's remaining policy arguments are inapplicable in light of well-articulated case law.

Cara R. Burns, Robert H. Garretson, III, Hicks Mims and Kaplan, Los Angeles, CA, M. Lawrence Oliverio, Kudirka & Jobse, Boston, MA, for Plaintiff.

Milord A. Keshishian, Milord & Associates, Los Angeles, CA, for Defendants.

PROCEEDINGS ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF ROSEN ENTERTAINMENT SYSTEM, LP'S MOTION FOR A PRELIMINARY INJUNCTION

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered plaintiff Rosen Entertainment System, LP ("Rosen")'s a motion for a preliminary injunction, defendant Icon Enterprises International, Inc. ("Icon")'s opposition, and Rosen's reply. Based on such consideration, the court concludes as follows.

## I.

### BACKGROUND

Rosen is a limited partnership based in Corona, California whose entire business consists of the design, manufacture, and sale of overhead flip-down video display units ("display units") for automobiles. Rosen holds several patents for these display units, such as United States Patents

No. 5,946,055 ("the '055 patent"), filed June 27, 1997, and 6,059,255 ("the '255 patent"), filed March 23, 1998. Rosen has numerous non-exclusive license agreements with other companies allowing them to sell its patented display units. About 65% of the display unit industry is under license.

Icon sells around 140 product lines of automotive electronics, including a number of display units such as its F90WIR, FLW8001, and F152WIR models. Since at least January 2002, Icon bought these display units from Punch Video, Inc. ("Punch Video"), a Taiwanese supplier of automotive electronics. Punch Video has a close business relationship with Rosen.

In 2003, Rosen and Punch Video launched Punch Video Americas ("PVA") to provide post-sales service and coordinate marketing for its North American customers. Thomas Clements ("Clements"), the Chairman of Rosen, is also the president of PVA. On June 23, 2003, representatives from Icon, Rosen, and Punch Video met to discuss the launch of PVA and its impact on Icon's business relationship with Punch Video. In October and November of 2004, Rosen offered to license its display unit patents to Icon, but Icon refused.

Rosen subsequently filed a complaint alleging that Icon's F90WIR and FLW8001 models infringe the '055 patent, and that Icon's F152WIR model infringes the '255 patent.[1]

## II.

### EVIDENCE

■ Due to the urgency of obtaining a preliminary injunction, district courts have the discretion "to consider otherwise inadmissible evidence in ruling on the merits of an application for a preliminary injunction." *Rosen Entm't Sys., LP v. Eiger Vision,* 343 F.Supp.2d 908, 912 (C.D.Cal. 2004), *see also Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984), *Glow Inds., Inc. v. Lopez,* 252 F.Supp.2d 962, 966 (C.D.Cal.2002). This discretion applies to the consideration of evidence presented by both plaintiffs and defendants. *Rosen Entm't Sys.,* 343 F.Supp.2d at 912. The court will exercise its discretion to consider inadmissible but reliable evidence and overrule Rosen's and Icon's evidentiary objections.

## III.

### ANALYSIS

■ Section 283 of Title 35 of the United States Code authorizes injunctive relief in patent cases. The party seeking a preliminary injunction bears the burden to prove (1) a reasonable likelihood of success on the merits, (2) irreparable injury if an injunction is not granted, (3) the balance of hardships tips in its favor, and (4) the injunction has a favorable impact on the public interest. *Hoop v. Hoop,* 279 F.3d 1004, 1007 (Fed.Cir.2002), *Amazon com, Inc. v. Barnesandnoble com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir.2001). " 'These factors, taken individually, are not dispositive, rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested.' " *Amazon com, Inc.,* 239 F.3d at 1350 (quoting *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451 (Fed.Cir.1988)).

---

1. Although this court allowed Rosen to conduct expedited discovery to determine whether any of Icon's other models infringed its patents, Rosen has not amended its motion for preliminary injunction to include any other infringing models. The court will limit its analysis and determination to the allegedly infringing models identified in the motion for preliminary injunction.

## A. Reasonable Likelihood of Success

To obtain a preliminary injunction, "a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent." *Hybritech Inc.*, 849 F.2d at 1451.

### 1. The '255 Patent

■ Rosen contends that Icon's F152WIR model infringes the '255 patent. Rosen does not base this contention upon a comparison of the '255 patent to the allegedly infringing F152WIR model. Instead, Rosen bases this contention on a comparison of the '255 patent to "the standard Necvox brand model RE1569 monitor product produced by Punch Video Inc.," which Rosen believes to be similar to Icon's F152WIR model. The court cannot find infringement of the '255 patent without actually comparing its claims to the allegedly infringing device. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed.Cir.2004) (stating that in order to find patent infringement, the court "must first interpret the claims to determine their scope and meaning" and "must then compare the properly construed claims to *the allegedly infringing device*") (emphasis added).

Since the court concludes that Rosen is not likely to succeed on its claim that Icon's F152WIR model infringes the '255 patent, the court will deny Rosen's motion for preliminary injunction with respect to Icon's infringement of the '255 patent. *See Amazon com, Inc.*, 239 F.3d at 1350, *see also Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556–57 (Fed.Cir.1994).

### 2. The '055 Patent

Icon asserts that the '055 patent is invalid and that, even if it were valid, it is not infringed by Icon's products. Icon also asserts the defenses of equitable estoppel and inequitable conduct.

### a. Validity

■ The patent holder is entitled to a presumption that the patent is valid. *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed.Cir. 1992). "The presumption acts as a procedural device which places the burden of going forward with evidence and the ultimate burden of persuasion of invalidity at trial on the alleged infringer." *Id.* At the preliminary injunction stage, the alleged infringer need only raise a substantial question that the patent is invalid, which requires less proof than the clear and convincing evidence standard used at trial. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1334–35 (Fed. Cir.2004).

Icon contends that the '055 patent is invalid because it was anticipated by prior art and it was obvious in light of prior art.

### (1) Anticipation

■ " 'To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently.' " *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1346 (Fed.Cir.1999) (quoting *In re Schreiber*, 128 F.3d 1473, 1477 (Fed.Cir.1997)). While a prior art reference generally needs "to disclose each and every limitation of the claim," it "may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it." *Id.* at 1347. "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *Id.*

Icon contends that the '055 patent was anticipated by five prior art references, an unpatented flip-down display unit designed by Shane Zimmerman ("Zimmerman display unit"), Japanese Patent No. 02–149083 ("the JP–083 patent") for an on-vehicle plane-type display device, Japanese

Patent No. 02–144242 ("the JP–242 patent") for an image receiving device for vehicle, United States Patent No. 5,775,762 ("the '762 patent")[2] for an overhead console having flip-down monitor, and United States Patent No. 5,738,392 ("the '392 patent") for a latch for securing an aircraft video device.

■ As to the Zimmerman display unit, Icon presents a declaration from Zimmerman in which he claims to have invented the display unit and shown it at trade shows in the early 1990s. There is no corroborating evidence for the prior public use of the Zimmerman display unit and, as a consequence, the court cannot find that the Zimmerman display unit anticipated the '055 patent. *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737–38 (Fed.Cir.2002), *Wesley Jessen Corp. v. Coopervision, Inc.*, 207 F.Supp.2d 1103, 1112 (C.D.Cal.2002). With respect to the other prior art references, the court has examined their claims and found that none of them contain a limitation that the display unit be less than 1.5 inches thick. Further, the court fails to see how a limitation of a display unit less than 1.5 inches thick is inherent in display units greater than 1.5 inches thickness. None of the prior art references therefore anticipate the '055 patent, claim 1 and 2 of which contain a limitation for a display unit less than 1.5 inches thick. *See Atlas Powder Co.*, 190 F.3d at 1346–47.

The court concludes that Rosen is likely to succeed in proving that the '055 patent was not anticipated by prior art.

**(2) Obviousness**

■ In determining whether a patent is invalid for obviousness, the court considers "(1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) the objective evidence of obviousness." *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed.Cir.2004).

■ Icon contends that the '055 patent is invalid because the limitation for a display unit less than 1.5 inches thick is obvious. As an initial matter, the court rejects Rosen's argument that preliminary injunctions cannot be denied on the grounds of obviousness. *See Nat'l Steel Car, Ltd.*, 357 F.3d at 1340 (reversing district court's grant of preliminary injunction based on obviousness).

■ First, the court has examined the scope and content of the prior art references cited by Icon. All these references-the JP–083 patent, the JP–242 patent, the '762 patent, and the '392 patent-teach flip-down display units for use in vehicles. None of these prior art references have a display unit with a thickness of less than 1.5 inches.

Second, although the parties do not articulate what they believe to be the level of ordinary skill in the art, the court has considered the factors outlined in *Envtl. Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 696–97 (Fed.Cir.1983), specifically the engineering background of the parties' experts, the rapid pace of innovations

2. Rosen contends that the '762 patent is not prior art. Although its February 27, 1997 filing date precedes the June 27, 1997 filing date of the '055 patent, the Patent and Trademark Office ("PTO") granted Rosen's certificate of correction to make the '055 patent a continuation-in-part ("CIP") application so that the '055 patent filing date would relate back to the August 16, 1996 filing date of Rosen's design patent for a ceiling mounted monitor system, United States Patent No. Des. 399,200 ("the '200 patent"). The court will address Icon's inequitable conduct claim based on the certificate of correction below. For the purposes of anticipation and obviousness, the court will assume that the '762 patent is prior art.

in the display unit field, and the relatively high level of technological sophistication of the display units. The court concludes that the level of ordinary skill here is a technical knowledge of the design and installation of overhead flip-down display units for automobiles.

Third, the main difference between the '055 patent and the prior art is that the display unit of the '055 patent has a thickness of less than 1.5 inches. Icon's expert, Enrique Stiles ("Stiles"), contends that this decrease in thickness is obvious in light of the trend towards thinness in the field, as exemplified by United States Patent No. 5,850,215 ("the '215 patent") for a display apparatus for car navigation systems made thinner to fit better into dashboards and consoles. Yet, it is apparent from Stiles' declaration that his expertise is in the field of audio, rather than video, equipment for cars. It is also not clear that the '215 patent, which focused on addressing the problem of fitting display apparatuses for car navigation systems into dashboards and consoles, would teach a person of ordinary skill that display units hanging from an automobile ceiling would be better if they were less than 1.5 inches thick. Icon argues that mere differences in size are obvious, but, as the '215 patent illustrates, a decrease in size is not necessarily unpatentable.

Fourth, the court must consider objective evidence of nonobviousness. Rosen has had commercial success, and there is a strong nexus between that success and its patents for display units like the '055 patent. *See Surgical Dyamics, Inc. v. Karlin Tech., Inc.,* 1999 U.S. Dist. LEXIS, at \*9 (C.D.Cal. Aug. 11, 1999), *In re GPAC Inc.,* 57 F.3d 1573, 1580 (Fed.Cir.1995). In addition, Rosen has widely licensed its display unit patents like the '055 patent, which tends to show that its improvements were not obvious to people of ordinary skill

in the field. *See Surgical Dyamics, Inc.,* 1999 U.S. Dist. LEXIS, at \*11.

In light of Rosen's commercial success and broad licensing of the '055 patent, as well as Icon's failure to show that the '055 patent's decreased thickness was obvious to a person of ordinary skill in the field based on the '215 patent, the court concludes that Rosen is likely to succeed in proving that the '055 patent was not obvious.

### b. Infringement

▆ In an infringement analysis, "the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 988 (Fed.Cir.1999).

Icon's sole argument against infringement is that its F90WIR and FLW8001 models do not infringe the '055 patent because their display units are thicker than 1.5 inches.

This court has previously construed the meaning of claims 1 and 2 of the '055 patent. *See Rosen Entm't Sys., LP,* 343 F.Supp.2d at 915–17. The '055 patent's display unit, which consists of a "generally planar mounting frame structure and screen," has a thickness of less than 1.5 inches. *Id.* The court has construed "mounting frame structure" to mean "only the structure to which the screen and hinge attach." *Id.* at 916–17.

For the purposes of determining infringement, the proper comparison is between the claimed thickness of the '055 patent's display unit and the corresponding display unit of Icon's F90WIR and FLW8001 models, excluding any thickness

attributable to additional elements like sidewalls, circuit board projections, or DVD mount projections. *See id.* Rosen presents evidence that, discounting any thickness attributable to additional elements like "decorative covering," the display units of Icon's models are less than 1.5 inches thick. The measurements of Icon's expert, which find that the display units of the F90WIR and FLW8001 models are greater than 1.5 inches thick, do not take into account the thickness attributable to additional elements of those models.

The court concludes that Rosen is likely to succeed in proving that the F90WIR and FLW8001 models infringe its '055 patent.

### c. Equitable Estoppel

██ In order to prove inequitable conduct, an alleged infringer must show that (1) the patentee, through misleading conduct, lead the alleged infringer to reasonably infer that the patentee had no intention of enforcing the patent, (2) the alleged infringer relies on this conduct, and (3) due to that reliance, the alleged infringer will be materially prejudiced by allowing the patentee to enforce its patent. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed.Cir.1992).

██ Icon contends that it was misled into believing that Rosen would not enforce its patent against Icon because Rosen acquiesced to Icon's purchase of the allegedly infringing models from Punch Video. To satisfy the first requirement of equitable estoppel, "the alleged infringer cannot be aware-as is possible under laches-of the patentee and/or its patent." *Id.* at 1042. There is no dispute that Icon was aware of Rosen and, in fact, Icon claims to have received Rosen's patent portfolio from Steven Chang, the president of Punch Video. As a consequence, the evidence precludes Icon's success on its equitable estoppel defense against Rosen.

### d. Inequitable Conduct

Icon asserts that Rosen committed inequitable conduct by withholding the JP–083 patent from the patent examiner at the PTO during the prosecution of the '055 patent and by filing a certificate of correction falsely claiming that the '055 patent was entitled to the priority date of the '200 patent.

### (1) Withholding Prior Art

██ To invalidate a patent based on inequitable conduct for withholding a prior art reference from the examiner, the court must first "determine whether the withheld reference meets a threshold level of materiality" and then "determine whether the evidence shows a threshold level of intent to mislead the PTO." *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed.Cir.1998). A prior art reference is not material if it is "cumulative or less material than other references already before the examiner." *Id.* at 1328.

██ Icon asserts that Rosen withheld the JP–083 patent from the examiner. The JP–083 patent teaches an on-vehicle plane-type display unit. In its patent application, Rosen cited other prior art references that teach display units for vehicles like airplanes and buses, such as United States Patent Nos. 5,096,271, 5,467,106, 5,583,735, and 5,743,487, and German Patent No. 4118711. The JP–083 is therefore not material because it is cumulative to the prior art cited by Rosen to the examiner.

### (2) False Claim of Priority

To determine inequitable conduct based on a false claim of priority, the court must consider the materiality of the misrepresentation and whether the patentee had the intent to deceive the PTO. *Kanga-*

*ROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1573 (Fed.Cir.1985).

Icon contends that Rosen filed a certificate of correction with the PTO in 2004 that falsely claimed its '055 patent application was a continuation-in-part application of its '200 patent and thus entitled to the earlier priority date of the '200 patent. According to Icon, the '055 patent's priority date cannot relate back to the '200 patent's priority date because the '200 patent is a design patent that does not include the '055 patent's limitations for use in automobiles and for a display unit that is less than 1.5 inches thick. Icon asserts that Rosen filed the certificate of correction to get around the earlier priority date of the '762 patent, which teaches a display unit for automobiles.

 The pertinent inquiry is not whether Rosen's application "is entitled to the priority date of the design application," but rather whether Rosen's "claim to the priority date constituted fraudulent or inequitable conduct." *Id.* at 1575. Icon only presents evidence that Rosen filed the certificate about five years after the issuance of the '055 patent. This delay is somewhat suspicious, but it does not by itself show that Rosen filed the certificate of correction with the intent to deceive the PTO. There is no evidence that Rosen filed the certificate of correction specifically to get around the '762 patent. Such suggestion involves Icon's speculation as to why Rosen filed the certificate of correction.

 Rosen's motivation for filing the certificate of correction is not clear from the evidence. In any event, it is not per se improper for Rosen to construe the '055 patent application as a CIP application, because a utility patent can benefit from the earlier priority date of a design patent with respect to any later-claimed subject matter in the utility patent that is sufficiently described in the earlier design application. *See In re Daniels,* 144 F.3d 1452, 1456 (Fed.Cir.1998), *Waldemar Link v. Osteonics Corp.,* 32 F.3d 556, 558 (Fed. Cir.1994). Due to the lack of evidence regarding. Rosen's motivation for filing the certificate of correction, the court cannot find that Rosen intended to deceive the patent office.

For all of the above reasons, the court concludes that Rosen has a reasonable likelihood of success in proving that Icon infringed a valid '055 patent.

**B. Irreparable Injury**

 There is a presumption of irreparable injury where, as here, "a clear showing of patent validity and infringement has been made." *Amazon com, Inc.,* 239 F.3d at 1350. Thus presumption, which is rebuttable, acts "as a procedural device which shifts the ultimate burden of production on the question of irreparable harm onto the alleged infringer." *Reebok Int'l, Ltd.,* 32 F.3d at 1556.

Icon has submitted evidence to rebut this presumption. Rosen licenses its display unit patents, such as the '055 patent, to numerous other companies and even offered a license to Icon before this litigation. *See High Tech Med. Instrumentation, Inc. v. New Image Inds., Inc.,* 49 F.3d 1551, 1557 (Fed.Cir.1995). In addition, Rosen delayed seventeen months before filing this action against Icon. *See id.* Further, Icon could satisfy a judgment against it. *Cf. Rosen Entm't Sys., LP,* 343 F.Supp.2d at 919–20.

 Rosen counters with evidence that it delayed bringing an infringement suit against Icon because it was in the process of suing five other infringers. Such evidence excuses Rosen's delay. *See Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975 (Fed.Cir.1996), *Hybritech Inc.,* 849 F.2d at 1457. Rosen also presents evidence that Icon's continued ability to sell display units without paying royalties

will undercut sales by Rosen and its licensees, damage Rosen's business relationship with its licensees, indirectly encourage other companies to disregard Rosen's patents, harm Rosen's reputation and goodwill, and deplete Rosen's market share in the display unit market. Although monetary damages might compensate Rosen for some of these injuries, the Federal Circuit has recognized that "the nature of the patent grant weighs against a holding that monetary damages will always suffice to make the patentee whole." *Hybritech Inc.*, 849 F.2d at 1456–57. The market effects of Icon's infringement will not likely be "fully compensable in money," *id.* at 1457, and are thus sufficient to support a finding of irreparable injury, *see id., Polymer Techs., Inc.*, 103 F.3d at 975–76, *Bio–Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed.Cir.1996), *3M Unitek Corp. v. Ormco Co.*, 96 F.Supp.2d 1042, 1051 (C.D.Cal.2000), even though Icon can satisfy a judgement, *A & E Prods. Group v. Cal. Supply*, 1993 WL 461489, at *8 (C.D.Cal. June 29, 1993), and Rosen has engaged in extensive licensing, *Wang Labs, Inc. v. The Chip Merchant, Inc.*, 1993 WL 482820, 28 U.S.P.Q.2d 1677, 1680, 1993 U.S. Dist. LEXIS 20012, at *14–16 (S.D.Cal.1993).

The court concludes that Rosen will suffer irreparable injury if an injunction is not granted as to the '055 patent.

## C. Balance of Hardships

■ "The district court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Hybritech Inc.*, 849 F.2d at 1457.

While Icon sells a wide variety of electronics equipment, Rosen's entire business revolves around the sale of display units like the '055 patent. Granting an injunction would prevent Icon from selling some of its products, but withholding an injunction from Rosen would seriously erode its market position in the ways described above. As a result, Icon's injury "is likely to be less significant than the harm to Rosen because [Icon] can continue to sell its many other products that are not at issue in this action." *Rosen Entm't Sys.*, 343 F.Supp.2d at 921.

The court concludes that the balance of hardships in this case tips in favor of Rosen.

## D. Public Interest

■ The court must weigh the impact of a preliminary injunction on the public interest. Icon contends that an injunction would harm the important public interest in competition and in full disclosure to the patent office. Icon's first contention cannot "overcome the strong public policy favoring the enforcement of patent rights." *Rosen Entm't Sys.*, 343 F.Supp.2d at 921. Icon's second contention also fails because the court has found that Rosen is reasonably likely to succeed against Icon's claims of inequitable conduct. The court concludes that no critical public interest will be harmed by the issuance of a preliminary injunction.

## E. Bond Requirement

Federal Rules of Civil Procedure, Rule 65(c) provides that no preliminary injunction shall issues unless the applicant gives proper security, "in such sum as the court deems proper," to cover "such costs and expenses as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Since neither party has presented any argument regarding a reasonable bond amount, the court will order Rosen to give security in the sum of $500,000 for the payment of any costs and damages incurred by Icon if it is

found to be wrongfully enjoined. *See Rosen Entm't Sys.*, 343 F.Supp.2d at 922.

### F. Conclusion

Having weighed and measured " 'each factor against the other factors and against the form and magnitude of the relief requested,' " *Amazon com, Inc.*, 239 F.3d at 1350 (quoting *Hybritech Inc.*, 849 F.2d at 1451), the court will grant Rosen's motion for a preliminary injunction preventing. Icon from making, using, selling, distributing, importing, or offering for sale any product that infringes the '055 patent, including but not limited to Icon's F90WIR and FLW8001 models.

### IV.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT:

Plaintiff Rosen Entertainment Systems, LP's motion for a preliminary injunction is GRANTED with respect to United States Patent No. 5,946,055 and DENIED with respect to United States Patent No. 6,059,255.